**Paul H. DELVE, et al., Plaintiffs,**

v.

**THREE LAKES WATER AND SANITA-
TION DISTRICT, Defendants.**

Civ. A. No. 83–K–571.

United States District Court,
D. Colorado.

Aug. 4, 1983.

Daane A. Crook, Cogswell & Wehrle, Denver, Colo., for plaintiffs.

Charles N. Woodruff, Timothy J. Beaton, Moses, Wittemyer, Harrison & Woodruff, P.C., Boulder, Colo., for defendants.

### ORDER GRANTING SUMMARY JUDGMENT

KANE, District Judge.

This is a civil rights action brought under 42 U.S.C. § 1983. The plaintiffs are qualified electors of the Three Lakes Water and Sanitation District in Grand County, Colorado. They complain that various constitutional rights were violated when the defendant, the Three Lakes Water and Sanitation District, enforced the act bearing the same name, *Colo.Rev.Stat.* § 32–10–101 *et seq.* (1973 & Supp.1983). The case comes before me on the district's motion to dismiss and cross motions for summary judgment. The issues have been extensively briefed and I am prepared to rule at this time.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. The Three Lakes Water and Sanitation District, located in Grand County, is a stunning mountainous area which surrounds Grand Lake, Shadow Mountain Lake, and Lake Granby. To meet the special requirements of the area, the Colorado legislature passed the Three Lakes Water and Sanitation District Act of 1971, *Colo.Rev.Stat.* § 32–10–101 (1973 & Supp.1983). Elections to recall directors of the district are governed by section 175, which provides:

(1) The procedure to effect the recall of an elective officer of the district shall be as follows:

(a) A petition, signed by electors entitled to vote for a successor of the incumbent sought to be recalled, *equal in number to forty percent of all persons who own real property within the district,* as determined from the rolls of the assessor of Grand county, demanding an election of the successor to the officer named in said petition, shall be filed in the office in

which petitions for nomination to office held by the incumbent sought to be recalled are required to be filed. (Emphasis added.)

Recall procedures in other water and sanitation districts are governed by the Special District Act, *Colo.Rev.Stat.* § 32–1–101 *et seq.* (1973 & Supp.1983). Section 906 of the Special District Act makes a petition for recall sufficient if it is signed "by three hundred electors entitled to vote for a successor of the incumbent sought to be recalled, or forty percent of said electors, *whichever number is lesser. . . .*" (Emphasis added.)

The effect of the Three Lakes Act is to require approximately 2,500 petitioners in order to set a recall election. From this, plaintiffs claim their first amendment right to petition for redress and to associate for advancement and expression has been violated. They also argue that the state statutory scheme denies them equal protection of the laws under the fourteenth amendment.

In September, 1982, plaintiffs filed four petitions with the district, requesting recall of four directors. The district's secretary, at a September 28, 1982 hearing, determined that there were 6,162 owners of real property in the district, and that each of the four recall petitions contained at least six hundred proper signatures. In response, and to determine the sufficiency of the recall petitions, the district filed suit in the Grand County District Court. In that proceeding the electors, the plaintiffs here, challenged the constitutionality of section 175 of the Three Lakes Act and sought an order that the petitions were sufficient under section 906 of the Special District Act. In January, 1983, the state court ruled that the petitions were insufficient as not containing the approximately 2,500 signatures required by section 175, and that section 175 was constitutional. Petitions for review to and by the Colorado Supreme Court, pursuant to section 170(2) of the act, and appeals

pursuant to the Colorado Appellate Rules, were denied. Petitions for rehearing in the Supreme Court and motions for reconsideration in the trial court were equally unsuccessful. No appeal was taken to the United States Supreme Court.

The district has moved for summary judgment on statutory and common law grounds, arguing that the state court judgment bars the present suit. It claims that all the requirements of claim preclusion have been met: identity of subject matter, identity of cause of action and identity of parties.

Plaintiffs disagree. They claim that different issues and arguments are made in the federal action than were made in the state suit, and that the plaintiffs in this case were not parties before the Grand County District Court and did not participate in that suit.

## II. RES JUDICATA—CLAIM PRECLUSION

■ The intricate rules of res judicata[1] have spawned a welter of decisions, articles and treatises out of which emerges a fairly useful rule:

> [w]hen a court of competent jurisdiction has entered a final judgment on the merits of a case, the parties to the action and their privies are . . . bound 'not only to every matter which was offered and received to sustain or defeat the claim or demand, but to any other admissible matter which might have been offered for that purpose.'

*Tomsick v. Jones,* 464 F.Supp. 371, 373 (D.C. Colo.1979) (Kane, J.), *citing Cromwell v. Sac. County,* 94 U.S. 351, 24 L.Ed. 195 (1876).[2]

Typically, three requirements must be satisfied before claim preclusion operates:

1. There must be a final judgment in a court of competent jurisdiction on the merits;

---

1. I use this term in the general sense, encompassing both claim preclusion and issue preclusion. This case is concerned only with the former.

2. *See Restatement (Second) Judgments* § 19 (1982): "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim."

2. The claims must be "identical"; and

3. The parties must be the same or in privity with those of the former litigation.

In the case at bar, there is no dispute that there was a final judgment in the state court action. Only the identicality of the parties and issues is contested.

### III. IDENTICALITY OF ISSUES

In comparing the state claims against those raised here, I am guided by the following rule from the *Restatement (Second) Judgments* § 24 (1982).

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger and bar, ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

> What factual grouping constitutes a "transaction," and what grouping constitutes a "series," *are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation,* whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage.[3] [Emphasis added.]

■ In their memorandum brief filed in state court, the plaintiffs made the following arguments. First, they claimed a fundamental right to recall elected officials. Next they argued that section 906 of the Special District Act "must be read as supplementing the Three Lakes Act..." with the result that "the 300 signature standard of the Special District Act ... is applicable to the Three Lakes Water and Sanitation District." *Defendant's Exhibit A–4,* at 5–6. Finally, the plaintiffs argued that section 175 was unconstitutional as violative of equal protection, "as it does not necessarily relate to a compelling governmental interest and it effectively prohibits the fundamental right of recall." *Id.,* at 15.

In their reply brief, plaintiffs identified Article 21, Sections 1–3 of the Colorado Constitution as the source of their fundamental right argument. They did not specifically identify the source of their equal protection argument, although it appears that the source was the due process clause of the Colorado Constitution, judging from their reliance on *Lujan v. Colorado State Board of Education,* 649 P.2d 1005 (Colo. 1982), *Defendant's Exhibit A–4,* at 9.

In his order of January 6, 1983, Judge Doucette ruled against the electors on all their claims. He held that section 175 of the Three Lakes Act was constitutional, that its application did not violate equal protection, and that there was no fundamental right to recall as to a quasi-municipal entity.[4]

It thus appears that the precise issues raised in the state court action are different from those presented to this court. Paragraphs 16 and 17 of the present complaint allege:

> Plaintiffs in the exercise of their statutory right of recall have a constitutional right under the 1st Amendment to the United States Constitution to (a) petition to the government for redress of grievances, and (b) associate for the advancement and expression of political beliefs.

---

3. *Compare Pomponio v. Larsen,* 80 Colo. 318, 321, 251 P. 534, 536 (1426):

   "The best and most accurate test as to whether a former judgment is a bar in subsequent proceedings between the same parties ... is whether the same evidence would sustain both, and if it would, the two actions are the same, and this is true although the two actions are different in form."

4. Within three months, the Colorado Supreme Court ruled that the Article 21 right of recall does apply to quasi-municipal entities. *Groditsky v. Pinckney,* 661 P.2d 279 (Colo.1983). Plaintiffs, in reliance on *Groditsky,* moved for relief in the state district court. By minute order dated May 5, 1983, Judge Doucette denied the motion, saying, "[t]his case has been pending since 9–30–82. The intent of the review process is to ensure a speedy resolution of these disputes and this Court will not allow endless reapplication for relief." *Defendant's Exhibit A–8.*

Plaintiffs in the exercise of their statutory right of recall have a constitutional right under the 14th Amendment to the United States Constitution to due process and equal protection of the laws, including the right to full, effective and equal participation in the political process.

Under § 24 of the *Restatement, supra,* these federal issues are extinguished, despite the fact that they were not raised in the state court action. Considered "pragmatically," the federal claims are factually identical to those in the state court. Both sets of claims arose from the same event, the four recall petitions filed by the plaintiffs in September, 1982.

The rationale against such claim-splitting is explained in Comment "a," § 24 of the *Restatement:*

"Claim," in the context of res judicata, has never been broader than the transaction to which it related. But in the days when civil procedure still bore the imprint of the forms of action and the division between equity and law, the courts were prone to associate claim with a single theory of recovery, so that, with respect to one transaction, a plaintiff might have as many claims as there were theories of the substantive law upon which he could seek relief against the defendant.

\* \* \* \* \* \*

The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories .... The transaction is the basis of the litigative unit or entity which may not be split.

My analysis of this issue would be incomplete without frankly recognizing that a vestige of the law/equity dichotomy remains in a § 1983 suit. Specifically, whether constitutional claims not raised and litigated in an earlier state proceeding are barred in a later federal suit has divided the federal courts of appeal. The Supreme Court specifically declined to resolve this conflict in *Allen v. McCurry,* 449 U.S. 90, n. 10, 101 S.Ct. 411, n. 10, 66 L.Ed.2d 308 (1980).[5]

The First, Fifth, Sixth, Eighth, Ninth[6] and Tenth[7] Circuits have held that res judicata precludes a § 1983 plaintiff from relitigating not only the issues which were actually decided in the state court, but also any other issues that could have been raised. *Lovely v. Laliberte,* 498 F.2d 1261, *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974); *Jennings v. Caddo Parish School Bd.,* 531 F.2d 1331 (1976); *Castorr v. Brundage,* 674 F.2d 531 (6th Cir. 1982); *Robbins v. Dist. Court,* 592 F.2d 1015 (1979); *Scoggin v. Schrunk,* 522 F.2d 436 (1975), *cert. denied* 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); *Spence v. Latting,* 512 F.2d 93, *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975).

Only the Second and Third Circuits agree that res judicata does not preclude a plaintiff from raising later the federal constitutional issues in federal court. *Lombard v. Board of Ed. of New York City,* 502 F.2d 631 (1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); *New Jersey Ed. Ass'n v. Burke,* 579 F.2d 764, *cert. denied,* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978). In light of the Tenth Circuit's decision in *Spence v. Latting, supra,* I am constrained to hold that the constitutional issues which plaintiffs advance here cannot now be raised for the first time in the context of a § 1983 suit.

**5.** Just last fall, over Justice White's dissent, the Court declined certiorari on the same issue, *Castorr v. Brundage,* —— U.S. ——, 103 S.Ct. 240, 74 L.Ed.2d 189 (1982).

**6.** *But see, Boucher v. Dramstad,* 522 F.Supp. 604 (D.C.Mont.1981), where the court refused to follow the *Scoggin* rule "when the application would result in manifest unfairness." 522 F.Supp. at 607.

**7.** The Tenth Circuit has recognized the issue left unresolved by *Allen v. McCurry.* Without any reference to its own decision in *Spence v. Latting,* it nevertheless "doubt[ed] whether § 1983 relief is available when a complainant does not exhaust the state remedy which is available to him." *Phelps v. Kansas Supreme Court,* 662 F.2d 649, 651 (10th Cir.1981).

## IV.  IDENTITY OF PARTIES

There is no question that the present plaintiffs were signers of the September, 1982 recall petitions.  They were not, however, designated as the representatives of the signers of the recall petitioners in the state court action.  *Order of September 30, 1982, Defendant's Exhibit A–1.*  This is a distinction without a difference.  If the rules of res judicata are to have any vitality, individuals who appeared through their representatives in the state court action must be bound by that judgment just as if they were the named representatives of the petitioners.

IT IS HEREBY ORDERED that the defendant's motion for summary judgment is granted.  Plaintiff's motion for summary judgment is denied.  Defendant's motion to dismiss is denied.  Costs to be awarded to defendant.